STEVEN THERRIEN & another[1] vs. LABOR RELATIONS
COMMISSION & others.[2]

Suffolk.   September 15, 1983. — December 22, 1983.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Labor,* Union agency fee.  *School and School Committee,* Collective bar-
gaining.  *Constitutional Law,* Union, Freedom of speech, Freedom of
association.  *Damages,* Back pay.  *Labor Relations Commission.  Ad-
ministrative Law,* Agency's interpretation of regulation.

In proceedings before the Labor Relations Commission by two teachers
who had been discharged at the request of a teachers' association for
nonpayment of agency service fees, in which the commission ordered
reinstatement, having determined that the association had violated
G. L. c. 150E, § 10 (*b*) (1), by refusing to accept the teachers' tender
of agency fees before their termination took effect and that the school
committee had violated G. L. c. 150E, § 10 (*a*) (1) and (3), by dis-
charging the teachers despite their tender, the commission did not of-
fend public policy or exceed its discretion under G. L. c. 150E, § 11,
by refusing to award back pay to the teachers because they had repeat-
edly failed to pay the agency service fees when due.  [647-649]
This court found no error in the Labor Relations Commission's interpreta-
tion of 402 Code Mass. Regs. § 17.05 (2) as requiring an employee who
is to be discharged for failure to pay an agency service fee he is contest-
ing to establish an escrow fund for the service fee before the effective
date of his termination in order to continue his employment pending
resolution of the dispute.  [649-651]

APPEAL from a decision of the Labor Relations Commis-
sion to the Appeals Court.

The Supreme Judicial Court ordered direct appellate re-
view on its own initiative.

[1] Walter Wasiuk.

[2] On motions to the Appeals Court pursuant to Mass. R. A. P. 15 (a),
365 Mass. 859 (1974), the school committee of Leominster and the Leom-
inster Education Association were allowed to intervene after the entry of
the appeal.

*Bruce N. Cameron,* of Georgia (*Jack D. Curtiss* with him) for the plaintiffs.

*Diane M. Drapeau* for the defendant.

*Sandra C. Quinn,* for Leominster Education Association, intervener, submitted a brief.

NOLAN, J.   The plaintiffs, Steven Therrien and Walter Wasiuk, appeal from a decision of the defendant, Labor Relations Commission (commission), that found their employer, the school committee of Leominster (committee), and the Leominster Education Association (association) guilty of prohibited practices, ordered the committee to reinstate them, but denied them back pay.   Therrien and Wasiuk appealed to the Appeals Court, pursuant to G. L. c. 150E, § 11.   We transferred the case to this court on our own motion.   G. L. c. 211A, § 10(A).   Therrien and Wasiuk request that this court reverse the commission's denial of back pay because the denial infringes on their constitutional rights.[3]   Alternatively, Therrien and Wasiuk request that this court remand the case to the commission for a consideration of their right to back pay under 402 Code Mass. Regs. § 17.05(2) (1981).   We affirm the commission's denial of back pay.   We decline to remand for a consideration of the plaintiffs' rights under 402 Code Mass. Regs. § 17.05(2) (1981).

We summarize the facts.   Therrien and Wasiuk were nonunion members and tenured science teachers in the school department of Leominster.   The collective bargaining agreement in effect at the time compelled nonunion employees to pay agency service fees to the association.[4]   Customarily, Therrien and Wasiuk delayed payment of their agency fees.   They consistently protested the amount of agency fees and requested pro rata rebates for political expenditures pursuant to G. L. c. 150E, § 12.

---

[3] We assume that the teachers base this argument on the First and Fourteenth Amendments to the United States Constitution, although they fail to specify this in their brief.

[4] According to the collective bargaining agreement between the committee and the association (art. XXII[c][3]), failure to comply would subject a teacher to termination of employment.

On two occasions during the fall of 1980, the association notified Therrien and Wasiuk that the agency service fees were due on November 1, 1980. Both teachers failed to meet the deadline. Pursuant to the collective bargaining agreement, the president of the association requested that the committee terminate the employment of both teachers. The superintendent of schools informed both Therrien and Wasiuk that if they failed to pay the fees by December 1, 1980, they would be dismissed. Therrien and Wasiuk failed to pay the fees.

As a result of their failure, the committee voted to dismiss Therrien and Wasiuk at a meeting on February 23, 1981. Neither Therrien nor Wasiuk attended this meeting, although both received notice of it. On February 24, 1981, immediately following notice of dismissal, Therrien and Wasiuk tendered payment of the agency service fees to both the treasurer and the president of the association. These offers were refused. Their dismissals became effective at the close of the school day on February 24. The association again rejected these tenders at an emergency executive board meeting held that evening.

Two days after their termination, the committee rehired the plaintiffs as substitute teachers. Subsequently, they were appointed as probationary teachers. As newly hired teachers, Therrien and Wasiuk were required to pay agency service fees. Approximately one month later, because of restrictions imposed by Proposition 2½, Therrien and Wasiuk were notified by the committee that they were not reappointed for the 1981-1982 school year. Their employment ended in June, 1981.

Therrien and Wasiuk filed charges with the commission on June 1, 1981, alleging that the association and the committee had engaged in prohibited practices within the meaning of G. L. c. 150E, § 10 (*a*) (1) and (3), and § 10 (*b*) (1). These charges were dismissed. However, on reconsideration, the commission reversed the dismissals and issued complaints against the association and the committee.

After a formal hearing, the commission held that the association had violated G. L. c. 150E, § 10 (*b*) (1), by refusing to accept the tender of agency fees prior to the teachers' effective terminations and that the committee had violated G. L. c. 150E, § 10 (*a*) (1) and (3), by terminating the teachers despite their tender. The commission reinstated Therrien and Wasiuk, but refused to award back pay. The commission also denied relief on the basis of 402 Code Mass. Regs. § 17.05(2).[5]

1. *Denial of back pay under G. L. c. 150E, § 11.*

The teachers argue that because the commission based its refusal to award back pay on the delayed payment of their agency fees, the commission violated the policies of G. L. c. 150E, and the Constitution of the United States.[6] We view the teachers' appeal as claiming that the agency has no discretion in denying back pay. Therefore, pursuant to G. L. c. 150E, § 11, the commission's decision should be reversed only upon a clear showing of error as provided in G. L. c. 30A, § 14 (7) (*c*).

Therrien and Wasiuk contend that because they cannot be forced to support the social, political, and speech activities of an association, they have the absolute right to refuse to pay agency service fees. They base this assertion on our recent decision, *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70 (1982). Therefore, they argue, that the commission's denial of back pay because of their delay in payment infringes on their constitutional rights.

---

[5] Since *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70 (1982), the commission has promulgated new rules and regulations effective December 9, 1982. 341 Mass. Reg. 46-55 (Dec. 9, 1982). See note 4, *supra*.

[6] The teachers also argue that 402 Code Mass. Regs. § 17.05(1), which provides, "If an employee . . . refuses to pay the service fee . . . the bargaining agent may request the employee's termination. The employer . . . shall terminate the employee . . . provided, however, that no employee shall be terminated who has tendered the required service fee prior to termination," invests them with the absolute right to delay the payment of fees. We regard this regulation simply as affording an employee a final opportunity to pay the fees prior to effective termination.

This issue, however, is not properly before us.[7] The commission found that Therrien and Wasiuk asserted that their dismissals violated certain procedural requirements concerning curative tenders. At no time in the course of the administrative proceedings did they challenge the proper amount of the agency fee or their dismissals on a constitutional level. Therefore we are not obliged to address this issue on appeal. *Albert* v. *Municipal Court of the City of Boston*, 388 Mass. 491, 493-494 (1983). *First Nat'l Bank* v. *Haufler*, 377 Mass. 209, 211-212 (1979).

In fashioning relief, the commission has discretion under G. L. c. 150E, § 11, to award reinstatement, "with or without back pay." Similar language in 29 U.S.C. § 160(c) (1976) (National Labor Relations Act) has been construed by Federal courts as delegating considerable remedial discretion. *Fibreboard Paper Prods. Corp.* v. *NLRB*, 379 U.S. 203, 216 (1964), noted in *School Comm. of Newton* v. *Labor Relations Comm'n*, 388 Mass. 557, 576-577 (1983). See *Labor Relations Comm'n* v. *Everett*, 7 Mass. App. Ct. 826, 828-830 (1979). We will not disturb the exercise of such discretion unless it is "arbitrary or capricious," "an abuse of discretion," G. L. c. 30A, § 14 (7) (g), or "a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies" of the statute. *Virginia Elec. & Power Co.* v. *NLRB*, 319 U.S. 533, 540 (1943).

---

[7] Assuming that constitutional issues were properly raised, we are not persuaded by the teachers' arguments. In *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n, supra* at 85, this court concluded that G. L. c. 150E, § 12, does not require dissenting employees to pay a disputed fee to an association pending adjudication as to the appropriate amount. The court recognized that the association has a right to those fees attributed to the cost of collective bargaining and contract administration. *Id.* at 77. See G. L. c. 150E, § 12. Balancing the dissenting teachers' rights not to be forced to support political activities of an association against the association's right to payment, the court construed G. L. c. 150E, § 12, to give dissenting teachers two options: (1) to resort to an internal rebate procedure, *id.* at 81; or (2) to bring a prohibited practice complaint before the Labor Relations Commission if the employee wishes to challenge the amount. *Id.* at 85. The court did not hold that an employee has the absolute right to refuse to pay the disputed fee.

The teachers assert that the denial of back pay is against the policies underlying G. L. c. 150E. We agree that a back pay award is an order designed to vindicate the public policy of the statute by making the employees whole for losses suffered on account of a prohibited practice. *Labor Relations Comm'n* v. *Everett,* 7 Mass. App. Ct. 826, 830-831 (1979). However, this does not mean that a denial of back pay in a particular case violates the public policy of G. L. c. 150E.

In *School Comm. of Greenfield, supra* at 85, we expressed concern over the proper functioning of an association through access to fees. Therefore, we suggested that a constitutional method of ensuring conformity with the public policy which promotes peaceful and efficient labor relations was to escrow the fees pending adjudication. *Id.* This suggestion, and the court's mandate to the commission to take prompt action on disputed fees by reason of prohibited practice claims, recognized the possibility of crippling the association by nonaccess to the fees.

In light of Therrien and Wasiuk's repeated delays in payment, which caused the association and the school committee to expend considerable time and effort, we find no violation of public policy and no abuse of discretion in denying the award. The commission properly considered the competing interests of the school committee and the association. *School Comm. of Greenfield, supra* at 85.

2. *Claim for back pay under 402 Code Mass. Regs. § 17.05 (2) (1981).*[8] Therrien and Wasiuk, by requesting that we

---

[8] 402 Code Mass. Regs. § 17.05(2) (1981) provides: "An employee shall have the right to contest the decision to terminate his employment by filing a grievance in accordance with the collective bargaining agreement and/or by filing appropriate charges before the Commission. During the pendency of the employee's grievance under the collective bargaining agreement or charge before the Commission, the employee shall be permitted to continue his or her employment if the employee pays the contested service fee to an escrow fund administered by the bargaining agent or offers to make other appropriate arrangements for payment of the service fee to the bargaining agent. An employee who refuses to pay the service fee to an escrow fund or to make other appropriate arrangements for payment of the service fee to the bargaining agent and who is terminated will be denied a back pay award by the Commission if the Commission finds the service fee unlawful."

remand for further consideration, are, in effect, requesting that we review the Commission's interpretation of 402 Code Mass. Regs. § 17.05(2) (1981), a regulation the commission promulgated pursuant to its authority under G. L. c. 23, § 9R. Therefore we must determine whether the commission's interpretation is "arbitrary, unreasonable or inconsistent with the plain terms of the rule itself." *Finkelstein* v. *Board of Registration in Optometry*, 370 Mass. 476, 478 (1976). "In the absence of clear error, the interpretation an administrative body gives to its own rule is entitled to deference." *Purity Supreme, Inc.* v. *Attorney Gen.*, 380 Mass. 762, 782 (1980).

In *City of Chicopee*, 7 M.L.C. 2040 (1981), the commission held that the right to continued employment under § 17.05 (2) exists only if the employee files a prohibited practice charge and contemporaneously establishes an escrow fund. *Id.* at 2046 n.6. The right to establish an escrow fund for a service fee arises at the time of the decision to terminate and expires as of the effective date of termination, "so long as this period of time is reasonable for purposes of taking the above action." *Id.* at 2046. The commission found in the present case that Therrien and Wasiuk had not complied with the above requirements.

Therrien and Wasiuk challenge this construction of the regulation. They assert that they complied with the terms of the regulation by paying their agency fees shortly after they were hired as probationary teachers on March 16, 1981, and by filing their charges on June 1, 1981. We agree with the commission's determination that these actions did not comply with the requirements set forth in the regulation.

While the regulation does not delineate the procedural requirements for filing charges and establishing escrow funds, the commission's interpretation is not clearly in error. Nor is it inconsistent with the terms of the regulation. This interpretation protects the interests of the association and the committee,[9] and simultaneously affords dissenting employees

---

[9] "Rather, the employee's right to *continue employment* depends upon filing the charge and contemporaneously setting up the escrow fund during this period. Otherwise, an employee who has been discharged for

a means by which they can "toll" their effective termination pending adjudication. *City of Chicopee, supra* at 2045-2046.

We therefore uphold the commission's interpretation of 402 Code Mass. Regs. § 17.05(2) (1981) and affirm the order of the commission.

*So ordered.*

---

non-payment of an agency fee could validly wait for up to six months before filing a charge with the Commission contesting the legality of the discharge, and then, by offering to establish an escrow fund, demand re-instatement pending disposition of the case." *City of Chicopee, supra* at 2046 n.6.