JOSEPH K. LYONS vs. LABOR RELATIONS COMMISSION
& another[1].

Suffolk. January 9, 1986. — May 8, 1986.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Labor Relations Commission. Labor,* Union agency fee, Judicial review.
*Constitutional Law,* Freedom of association, Union, Equal protection
of laws. *Administrative Law,* Judicial review.

Any decision by the Labor Relations Commission, including a prehearing
    dismissal, which effectively determines the outcome of an employee's
    constitutionally based challenge of a union's agency fee is a final order
    under G. L. c. 150E, § 11, subject to judicial review pursuant to G. L.
    c. 30A, § 14. [500-503]
A regulation of the Labor Relations Commission establishing a forty-five
    day limitation period for union agency fee challenges by employees who
    are not union members, in contrast to the six-month limitation period
    provided for other prohibited practice complaints, was held unconstitu-
    tional on equal protection grounds. [503-507]

APPEAL from a decision of the Labor Relations Commission.

A motion to require the Labor Relations Commission to
assemble the record for purposes of appeal was heard in the
Appeals Court by *Frederick L. Brown,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Bruce N. Cameron* of Virginia, for the plaintiff.

*John B. Cochran (Jean Strauten Driscoll* with him) for Labor
Relations Commission.

*Brian A. Riley,* for the intervener, submitted a brief.

LIACOS, J. The plaintiff, Joseph K. Lyons, is a public school
teacher employed by the Whittier Regional Vocational District
School Committee. Lyons is within a collective bargaining

---

[1] Whitttier Regional Teachers Association as intervener.

unit represented by the Whittier Regional Teachers Association (union), but he is not a union member. Pursuant to the collective bargaining agreement negotiated by the union covering the 1982-1983 school year, nonunion employees within the collective bargaining unit were required to pay an agency fee equal to union membership dues.[2] Failure to pay the agency fee was cause for dismissal under the terms of the agreement.

In early 1983 the union sent a letter to Lyons demanding that he pay an agency fee of $217 for the period September 1, 1982, to August 31, 1983. A copy of the regulations of the Labor Relations Commission (commission) relating to agency fee assessments and challenges thereto was enclosed. See 402 Code Mass. Regs. §§ 17.00-17.16 (1982). Lyons objected to the amount of the fee. He placed the entire amount demanded in an escrow account and filed a prohibited practices charge with the commission asking it to determine the appropriate amount of the agency fee. The commission dismissed Lyons's complaint without a hearing. 402 Code Mass. Regs, § 17.06 (2) (1982).[3] In response to Lyons's request for reconsideration, the commission affirmed its dismissal of his complaint.

Lyons filed a notice of appeal to the Appeals Court. G. L. c. 150E, § 11. The commission, however, refused to assemble

---

[2] Under G. L. c. 150E, § 12 (1984 ed.), teachers who are not union members may be required by a collective bargaining agreement "to pay an agency service fee to the association 'commensurate with the cost of collective bargaining and contract administration . . .' as a condition of the continued employment." *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70, 72 (1982). See *Chicago Teachers Local 1* v. *Hudson*, 475 U.S.292, 303 n.10 (1986).

[3] Section 17.06 (2) of 402 Code Mass. Regs. (1982) provides: "Except for good cause shown, a charge challenging the amount of a service fee or its validity under 402 CMR 17.03 or 17.05 shall be filed within forty-five (45) days after the bargaining agent has made a written demand for payment of the fee pursuant to 402 CMR 17.05" (emphasis omitted).

Lyons filed his claim seventeen days beyond the expiration date of the forty-five day limitations period. The commission determined that Lyons had failed to show good cause warranting a waiver of the forty-five day filing requirement. Lyons does not contend that his complaint was timely filed, nor does he challenge the commission's conclusion that his noncompliance was unexcused.

the record for transfer to the Appeals Court, taking the position that dismissals of charges are not final orders under G. L. c. 150E, § 11, and therefore are not subject to judicial review. Lyons thereafter filed a motion with a single justice of the Appeals Court to obtain an order requiring the commission to assemble the record for appeal. The single justice denied the motion. Lyons appealed from that decision. The Appeals Court reversed the single justice's denial of Lyon's motion. *Lyons* v. *Labor Relations Comm'n,* 19 Mass. App. Ct. 562 (1985). It held that the commission was required to assemble the record and, further, that the Appeals Court had jurisdiction over Lyons's appeal. *Id.* at 564-569. It went on to consider Lyons's contention that the forty-five day limitation period for filing agency fee challenges was unconstitutional under both the United States Constitution and the Massachusetts Declaration of Rights.[4] The court concluded that this contention was without merit and affirmed the commission's dismissal of Lyons's complaint. *Id.* at 564, 569-572. We granted the parties' cross applications for further appellate review. Mass. R. A. P. 27.1 (a), as amended, 367 Mass. 920 (1975).

1. *Judicial review of prehearing dismissal.* General Laws c. 150E, § 11 (1984 ed.), provides, in pertinent part: "When a complaint is made to the commission that a practice prohibited by section ten has been committed, the commission may issue an order dismissing the complaint or may order a further investigation or a hearing thereon. The commission may dismiss a complaint without a hearing if it finds no probable cause to believe that a violation of this chapter has occurred or if it otherwise determines that further proceedings would not effectuate the purposes of this chapter. . . . Any party aggrieved by a final order of the commission may institute proceedings for judicial review in the appeals court within thirty days after receipt of said order. The proceedings in the appeals court shall, insofar as applicable, be governed by the provisions of

---

[4] By the time the matter was argued to the Appeals Court, a record on appeal satisfactory to that court had been established. *Lyons, supra* at 564 n.5.

section fourteen of chapter thirty A [the State Administrative Procedure Act]."

The commission contends that G. L. c. 150E, § 11, vests it with broad discretionary authority to dismiss prohibited practice charges prior to hearing, and that such dismissals are not final orders within the meaning of the statute. The commission maintains that judicial review of its discretionary authority to dismiss prohibited practice complaints without a hearing is limited to the questions whether it has exceeded its statutory authority or abused its discretion. Thus, in the instant case, the commission avers that its dismissal of Lyons's agency fee challenge prior to hearing as untimely filed was not properly reviewable in the Appeals Court under the standards set forth in G. L. c. 30A, § 14 (1984 ed.). We disagree.

Public employees who are not union members may be required, as a condition of their employment, to pay an agency fee to their collective bargaining representative to support the costs of the bargaining process, contract administration, and grievance adjustment. *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n,* 385 Mass. 70, 72-73 (1982). *Abood* v. *Detroit Bd. of Educ.,* 431 U.S. 209, 225-226 (1977). Those public employees have a constitutional right grounded in the First Amendment, however, to "prevent the Union's spending a part of their required service fees to contribute to political candidates and to express political views unrelated to its duties as exclusive bargaining representative." *Id.* at 234. There is, therefore, a constitutional basis for such an employee's challenge to the amount of an agency fee on the ground that the fee is in excess of the employee's pro rata share of the legitimate costs of collective bargaining activities.

The constitutional nature of such agency fee complaints necessarily informs our interpretation of the term "final orders," as appearing in G. L. c. 150E, § 11. We must, if possible, construe the statute to avoid the constitutional difficulty that would attend an interpretation permitting only limited judicial review of claims predicated on the First Amendment rights of dissenting employees. See *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n, supra* at 79. Accordingly, we con-

clude, as did the Appeals Court in *Lyons, supra* at 569, that any decision by the commission, including a prehearing dismissal, which effectively determines the outcome of a constitutionally based challenge of an agency fee is a final order under G. L. c. 150E, § 11, subject to judicial review pursuant to the provisions of G. L. c. 30A, § 14.[5]

Our interpretation of G. L. c. 150E, § 11, is consistent with the view we expressed in *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n, supra* at 82. We recognized there that, out of concern for the constitutional rights of dissenting employees, the United States Supreme Court has placed on the collective bargaining representative the burden of justifying its agency fee assessment when the agency fee payor objects to the amount of the fee. We went on to state that this burden "is only meaningful if legitimacy is proved before a neutral tribunal *and subjected to judicial review*" (emphasis supplied). *Id.* The Supreme Court said much the same thing in a recent opinion. *Chicago Teachers Local 1* v. *Hudson,* 475 U.S. 292 (1986). The Court held, as we did in *Greenfield, supra* at 82, that an internal union procedure for adjudicating agency fee challenges was constitutionally inadequate, stating that dissenting employees must be afforded a prompt decision before a neutral decision maker, and that "the courts remain available as the ultimate protectors of constitutional rights." *Chicago Teachers Local 1* v. *Hudson, supra* at 307 n.20.

---

[5] We need not conclude that prehearing dismissals of constitutionally based agency fee challenges are "adjudicatory proceedings," as that term is defined in G. L. c. 30A, § 14 (1984 ed.), in order to construe such dismissals as final orders within the meaning of G. L. c. 150E, § 11. Cf. *Milligan* v. *Board of Registration in Pharmacy,* 348 Mass. 491, 499-500 (1965). Although G. L. c. 30A, § 14, states that judicial review shall be available to those aggrieved by a final agency decision "in an adjudicatory proceeding," G. L. c. 150E, § 11, does not limit judicial review of agency decisions under that section in a like manner. In addition, G. L. c. 150E, § 11, provides that judicial review under that chapter shall be governed by G. L. c. 30A, § 14, only "insofar as applicable." Thus, we do not read into G. L. c. 150E, § 11, the limitation contained in G. L. c. 30A, § 14, that decisions arising from adjudicatory proceedings alone are subject to judicial review.

The commission's protestations notwithstanding, we do not think that subjecting prehearing dismissals of constitutionally based agency fee challenges to judicial review under G. L. c. 30A, § 14, involves any significant encroachment on the commission's discretionary authority. The commission still may dismiss agency fee complaints prior to hearing if it finds, after investigation, that there is no probable cause to believe that the fee is excessive, if it determines that further proceedings would not effectuate the purposes of c. 150E, or if the complainant has not complied with procedural regulations governing the filing of complaints. Such decisions, however, may be overturned on review if, inter alia, they are in violation of constitutional provisions, in excess of the statutory authority or the jurisdiction of the commission, or made on unlawful procedure, or are arbitrary, capricious, or constitute an abuse of discretion. See G. L. c. 30A, § 14 (7). Commission decisions which legitimately fall within its discretionary powers will be sustained on review; its statutory authority therefore remains intact.

2. *Validity of 402 Code Mass. Regs. § 17.06 (2) (1982).* Pursuant to its authority under G. L. c. 23, § 9R, the commission promulgated regulations to implement the provisions of G. L. c. 150E, § 12. See 402 Code Mass. Regs. §§ 17.00-17.16 (1982). Under § 17.06 (2), quoted at note 3, *supra,* a challenge to the assessment of an agency fee must be filed within forty-five days after the bargaining agent has made a written demand. All other prohibited practice charges are governed by a six-month limitation period. 402 Code Mass. Regs. § 15.03 (1981). Lyons attacks the validity of the forty-five day limitation period for agency fee challenges. He contends that it is arbitrary and capricious, violative of arts. 6 and 11 of the Massachusetts Declaration of Rights, and repugnant to the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States. We need consider but one of the asserted grounds for striking down the regulation at issue, for we conclude that Lyons's equal protection argument is a meritorious one.

Because an employee who is within a collective bargaining unit, but who is not a member of the union, may not be required constitutionally to subsidize ideological and political activities of the union, the Supreme Court has emphasized the importance of procedural safeguards with regard to agency shop provisions. *Chicago Teachers Local 1* v. *Hudson, supra* at 302-303. Of particular relevance is the Court's admonition that a non-member employee "must have a fair opportunity to identify the impact of the governmental action on his interests and to assert a meritorious First Amendment claim." *Id.* at 303. By establishing a forty-five day limitation period for agency fee challenges in contrast to the six-month limitation period that applies to other prohibited practice complaints, the commission has greatly circumscribed that opportunity, thus impairing the exercise of a fundamental right. Under accepted equal protection principles, where a First Amendment claim is at stake, we must scrutinize strictly the contested regulation to determine whether it is necessary to promote a compelling State interest. See *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth,* 375 Mass. 85, 93 (1978); *Shapiro* v. *Thompson,* 394 U.S. 618, 634 (1969). See also *Commonwealth* v. *B & W Transp. Inc.,* 388 Mass. 799, 803 (1983) (same equal protection analysis applies to classifications made by regulations promulgated pursuant to statutory authority as applies to classifications made by statute).[6]

The commission maintains that it promulgated 402 Code Mass. Regs. § 17.06 (2) (1982) in response to this court's directive in *Greenfield, supra.* There we stated: "The commission should give prompt attention to [agency service fee] complaints

---

[6] The commission argues that the State may impose periods of limitation on the assertion of constitutional claims without impairing the claimants' underlying constitutional rights. See *Logan* v. *Zimmerman Brush Co.,* 455 U.S. 422, 437 (1982); *Chase Sec. Corp.* v. *Donaldson,* 325 U.S. 304, 314 (1945). This argument does not address the issue with which we are faced in the instant case. Here the commission has imposed a limitation period on a distinct species of constitutionally based claims while subjecting all other prohibited practice complaints to a limitation period four times longer in duration. Such a classification scheme raises obvious equal protection concerns even if a forty-five day limitation period for agency fee challenges were constitutionally adequate when viewed in isolation.

in light of the competing interests of dissenting employees and associations of public sector employees. The necessity of protecting the rights of dissenters is not a justification for allowing an association to be 'crippled by nonaccess to that portion of the fee which will be used for collective bargaining, contract administration and grievance adjustment.' *White Cloud Educ. Ass'n* v. *White Cloud Bd. of Educ.*, [101 Mich. App. 309, 319 (1980)]." *School Comm. of Greenfield* v. *Greenfield Educ. Ass'n*, 385 Mass. 70, 85 (1982). In a footnote we indicated that the commission should "adopt appropriate procedures, including one involving a prompt preliminary determination and payment of that portion of the fee clearly payable to the association, with the balance of the funds in escrow to be held by the commission pending resolution of the dispute." *Id.* at 85 n.9.

The commission maintains that 402 Code Mass. Regs. § 17.06(2) (1982) was intended to effectuate the *Greenfield* "mandate" by reducing the period of time in which a union is without access to the agency fees to which it is legitimately entitled. As preordained by our language in *Greenfield*, we acknowledge that the State has a compelling interest in ensuring that unions are not rendered financially unstable because of nonaccess to agency fees. See *Chicago Teachers Local 1* v. *Hudson*, 475 U.S. 292, 310 (1986) (procedure whereby 100% of agency fee is placed in escrow when employee contests amount assessed has "serious defect of depriving the Union of access to some escrowed funds that it is unquestionably entitled to retain"). It remains to be determined whether, in the circumstances of this case, the forty-five day limitation period is tailored narrowly to this legitimate objective. See *Police Dep't of Chicago* v. *Mosley*, 408 U.S. 92, 101 (1972); *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth, supra*. In our view, it is not.

The concern we expressed in *Greenfield* relating to the financial well being of unions was not directed toward the delay in filing agency fee complaints by dissenting employees that might be occasioned by the existence of a six-month limitation period. Instead, we were concerned that, once a claim was filed, the

entire sum demanded could be tied up in escrow for several years pending disposition of protracted arbitration and agency proceedings.[7] Hence we directed the commission to promulgate regulations providing for a prompt preliminary determination, *once an agency fee complaint is filed*, whether any portion of the fee is not legitimately in dispute so that that portion may be released to the association while the balance remains in escrow.

The commission did in fact enact a regulation directly responsive to the *Greenfield* mandate. Title 402 Code Mass. Regs. § 17.09(3) (1982) provides in part that " [i]f, upon investigation, the Commission determines that any portion of the service fee is clearly payable to the bargaining agent or the charging party, that portion of the fee shall be released from the escrow account and promptly remitted to the bargaining agent or the charging party." This regulation by itself should be sufficient to achieve the compelling State interest in ensuring that unions are not crippled by nonaccess to agency fees.[8]

---

[7] Under G. L. c. 150E, § 12, and 402 Code Mass. Regs. § 17.16(1) (1982), the union may request termination of an employee who refuses to pay an agency fee after a valid demand for payment. The regulations direct the employer on such a request to terminate the employee after reasonable notice. An employee may not be terminated if he tenders payment prior to the final decision to terminate, however, nor may an employee be terminated if he has filed a charge with the commission contesting the fee and established an escrow account. 402 Code Mass. Regs. § 17.16(2) (1982). The regulations do not require the union to wait until expiration of the applicable limitation period for agency fee challenges before it instigates termination proceedings. Thus, soon after demand for payment is made the union can force an employee either to tender the full amount or to file a claim contesting the assessment. This eliminates any problem regarding prompt union access to agency fees which might be related to the time taken by dissenting employees to file their prohibited practice complaints.

[8] The commission has conceded that it has yet to decide a single agency fee dispute on the merits since *Greenfield* was decided, and that in many instances it has taken up to several years to proceed through the preliminary phases of adjudication. This, of course, proves the concerns we articulated in *Greenfield* to have been well founded. The parties have not indicated whether, in any of the cases now pending before the commission, a preliminary determination has been made regarding the amount of the agency fee

Because the forty-five day limitation period of § 17.06(2) has no bearing on the speed with which escrowed agency fees are released to the union, the commission has failed to demonstrate that degree of affinity between the "legislative" means and ends required to sustain the regulation under strict scrutiny. Further, even if the forty-five day limitation period has some tendency to advance the State interest by forcing dissenting employees to file their complaints promptly, we view this contribution as marginal at best and not sufficient to justify the concomitant impairment of First Amendment rights. This is particularly true given the union's power via the threat of termination to prod dissenting employees into filing their claims, see note 7, *supra*, a power which renders the contested regulation unnecessary.

We conclude that § 17.06(2) is unconstitutional on equal protection grounds and cannot stand. Nonmember employees contesting the amount of a union's agency fee assessment are entitled to the benefit of the same six-month limitation period which all other parties filing prohibited practice charges currently enjoy. It follows from today's decision that Lyons's complaint in the instant matter was timely filed. Accordingly, the case is remanded to the commission, which shall proceed to consider Lyons's prohibited practice complaint on the merits.

*So ordered.*

clearly payable to the union and, if so, whether those funds have been released from escrow pursuant to 402 Code Mass. Regs. § 17.09(3) (1982).